LEVI FROTHINGHAM *et al.*

*v.*

WILLIAM PETTY.

*Opinion filed June 19, 1902.*

1. EXECUTORS AND ADMINISTRATORS—*when administrator is properly removed.* If an administrator moves to another county and neglects or refuses to file a petition to sell real estate of the decedent to pay claims which are being pressed, the county court, upon petition showing such facts, may issue a citation requiring the administrator to appear and file the petition, or in default thereof that he show cause why he should not be removed; and if, after personal service, he fails to appear, the court may remove him.

2. SAME—*if county court has jurisdiction to remove administrator its order cannot be collaterally attacked.* If the record shows facts which confer jurisdiction upon the county court to remove an administrator and appoint an administrator *de bonis non*, its order cannot be collaterally attacked in a proceeding to have a sale by the latter set aside; nor will a court of review, in a collateral proceeding, go behind the order to see if it is warranted by the evidence.

3. SAME—*irregularities in removing administrator can only be urged in a direct proceeding.* If the county court complies with all necessary provisions of the statute to give it jurisdiction of the person of an administrator and the subject matter of his removal, irregularities in the matter of his removal by the court can only be urged in a direct proceeding for reversal.

4. SAME—*regularity of appointment of an administrator de bonis non cannot be collaterally attacked.* If an administrator *de bonis non* is appointed by the proper court having jurisdiction, he is at least an administrator *de facto*, and the regularity of his appointment can not be questioned in a collateral proceeding.

5. JUDICIAL SALES—*when purchaser will be protected.* If an administrator *de bonis non* is appointed by a court having jurisdiction

and is legally authorized to file a petition and make the sale of the decedent's real estate to pay debts, the rights of purchasers will be protected, in a collateral proceeding, against mere errors which may have intervened.

6. SAME—*effect of court's failure to require an additional bond.* The oversight of the county court in failing to require an administrator *de bonis-non* to give an additional bond when selling real estate will not defeat the title of parties who were not parties to the record and who obtained title by *mesne* conveyances from the purchaser at the sale, where the record shows faithful performance by the administrator of his duties and it does not appear that any one is injured by the omission.

APPEAL from the Circuit Court of Pope county; the Hon. A. K. VICKERS, Judge, presiding.

D. G. THOMPSON, for appellants:

In matters of administration of estates, county courts are courts of general jurisdiction, and their orders and decrees are entitled to the same liberal intendments as are indulged in favor of decrees of circuit courts. *Pike* v. *Chicago,* 155 Ill. 656.

Such orders and decrees of the county courts import verity on collateral inquiry, and all requirements to the validity of such orders and decrees will be inferred, and will not be open to collateral attack. Rorer on Judicial Sales, secs. 61, 64; Kleber on Void Judicial Sales, sec. 186; *Pike* v. *Chicago,* 155 Ill. 656; *Blair* v. *Sennott,* 134 id. 78.

It is the policy of the law to uphold judicial sales, and petitions in probate sale are liberally construed, the law favoring maintenance rather than the destruction of titles thereunder. Kleber on Void Judicial Sales, sec. 229; *Moffitt* v. *Moffitt,* 69 Ill. 641; *Wing* v. *Dodge,* 80 id. 564.

It is a universal rule of law that parties and privies are concluded by the judgment of courts of competent jurisdiction on all questions adjudicated. *Gould* v. *Sternberg,* 128 Ill. 510; Kleber on Void Judicial Sales, sec. 187.

An order of sale is an adjudication that the essential facts to confer jurisdiction exist as alleged in the petition. Kleber on Void Judicial Sales, sec. 331.

Letters of administration granted by a court having jurisdiction for such purpose are, while unrepealed, conclusive evidence of authority of the grantee, and cannot be impeached collaterally. 1 Woerner on Am. Law of Administration, (2d ed.) 568.

Until reversed it cannot be questioned in law or chancery, even though the grant was erroneous. *Shephard* v. *Rhodes*, 60 Ill. 301; *Smith* v. *Smith*, 168 id. 488; *Hudnall* v. *Ham*, 172 id. 76.

WHITESIDE & DURFEE, for appellee:

Until a valid revocation of letters of administration already granted on an estate is made, the county court has no power or jurisdiction to appoint another as administrator *de bonis non* of the same estate, and an order for such an appointment under such circumstances is absolutely void. *Munroe* v. *People*, 102 Ill. 406.

The county court, in the absence of statutory authority, has no power to remove an administrator or to revoke letters of administration after the administrator has accepted and qualified and entered upon his duties, and until some one of the causes mentioned in the statute is placed before the court for action the court has no power to act at all, or, in other words, has no jurisdiction. *Munroe* v. *People*, 102 Ill. 406.

Where a matter is submitted to a court upon which that court has jurisdiction to consider and decide, and such court does decide, its judgment, though erroneous, is valid until reversed or set aside; but unless a cause brought before a court is such that the court has lawful authority to deliberate and decide, such court has no jurisdiction, and its decision in such case is a nullity. The case must be one committed to that court by law. *Munroe* v. *People*, 102 Ill. 406.

If the court has proceeded without jurisdiction, its judgment is void to every intent and to every purpose,

and it must be so declared in every court in which it is presented. *Payson* v. *People*, 175 Ill. 267.

It results, that even if the rule as to *de facto* officers applies to administrators, unless Steagall was properly removed there was no vacancy, and if there was no vacancy or estate to administer there could not be an administrator *de facto* or *de jure*. *Roderigas* v. *East River*, 76 N. Y. 316; *Munroe* v. *People*, 102 Ill. 406; *Allen* v. *Dundas*, 3 T. R. 123; *Griffith* v. *Frazier*, 8 Cush. 9.

A petition to sell real estate to pay debts by an administrator shall set forth the facts and circumstances on which the petition is founded, as set out in the statute. *Harding* v. *LeMoyne*, 114 Ill. 65; Starr & Cur. Stat. chap. 3, sec. 100.

A petition to sell real estate to pay debts should also show the amount of claims allowed, and that they were allowed within two years from the granting of letters. *Nenninger* v. *Fietsam*, 29 Ill. App. 648.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a suit in partition, brought by William Petty against appellants, in the circuit court of Pope county. Appellee avers that he is the owner in fee of an undivided one-half interest in the premises described in the bill, acquiring title by descent from his grandmother, Emily Mansfield, who died intestate June 21, 1890, leaving Margaret J. Mansfield, her daughter, and appellee, as her only heirs-at-law. Defendants filed their joint and several answer to complainant's bill, setting up title by *mesne* conveyances from the administrator *de bonis non*, Willis Baker, of the estate of Emily Mansfield, under a decree of the county court ordering a sale of said premises for the payment of the debts of the estate, and by stipulation in writing all the files, records, orders and processes, etc., of the probate court of Pope county in the matter of the estate of Emily Mansfield were considered as part and parcel of the answer. The complain-

ant objecting to the sufficiency of the answer, the cause was set down for hearing on bill and answer thereto under stipulations, and the court found that the answer of the defendants was insufficient; that the probate court proceedings in the county court of Pope county were insufficient to pass title to the purchaser at the administrator's sale, and decreed that the complainant was entitled to partition of the land described in said bill and was the owner of an undivided half interest in and to said land. The defendants stood by their answer, and the cause now comes before us on appeal.

The controversy in this court arises upon the question whether the county court had power to make the sale of the lands in question upon the application of Baker, as administrator *de bonis non*, appellee's contention being that Steagall, the administrator, was not properly removed, and that Baker's appointment was therefore void, and being void, the county court did not have jurisdiction or authority to direct the sale on Baker's petition.

It appears that a petition was filed in the county court of Pope county by Margaret J. Mansfield, in which it was alleged that on July 2, 1890, William O. Steagall was duly appointed administrator of said estate by the county court of Pope county; that the deceased left a large amount of land and not sufficient personal property to pay the child's award and to pay the debts against the estate; that a decree of said court was obtained to sell all of said land, and the same was by said administrator sold to pay the said debts and a deed made to one Harrington Clanahan, the purchaser, and that on bill filed by petitioner and the other heir, William Petty, the said decree, sale, deed and order approving said sale were all set aside and annulled by the circuit court of Pope county at its last May term, 1892; that in addition to said matters before mentioned, the said circuit court made the $100 paid by H. Clanahan, the purchaser of said land, on said purchase a first lien on said land, and

ordered that the whole matter be remitted to the county court for the purpose of further proceeding to sell said land to pay the debts due from said estate; that there was a mortgage of $500 and interest held by F. M. Clanahan on said land, which was overdue, and the said Clanahan was about to and would foreclose said mortgage if steps were not taken at once by the administrator to obtain a decree for the sale of said land to pay the same; that if a decree was obtained to sell said land soon, a part of the land could be sold for enough to pay off the debts of the estate and leave enough land for a home for petitioner; that the administrator had become a resident of Shelby county, in this State, and had neglected and refused to take any steps toward obtaining a decree for the sale of said land, and had failed to make report, as he should. Petitioner therefore asked that a citation or notice might be sent to the administrator, and he might be removed and some other discreet person appointed in his stead, and such orders might be made as would protect the rights of said petitioner and other heir. This petition was properly verified. Thereupon the following order was entered by the court:

"Now, on this day, comes Margaret J. Mansfield, the petitioner herein, and presents to the court her petition for citation, and represents to the court that William O. Steagall, administrator of said estate, has failed to make report and take proper steps towards obtaining a decree to sell real estate to pay debts; that said Steagall is now a resident of Shelby county, Illinois. The court carefully examines said petition and finds the allegations therein to be true, and the court being sufficiently advised in the premises, it is by the court ordered that citation issue from this court under the seal thereof; that said Steagall be and appear before the court at the time and place therein set forth, or show good reason why he should not be removed from his said office. Said citation to be directed to the sheriff of Shelby county, Illinois,

returnable to the September term of this court, A. D. 1892, as the law directs, and which is accordingly done.—First day of August term, Monday, 1st, 1892."

On the second day of August, 1892, a citation in the usual form was issued, reciting that "William O. Steagall has not made report and proceeded to obtain decree for sale of real estate to pay debts, and is guilty of other delinquencies," and notifying said Steagall to appear before the county court of Pope county on September 5, 1892, "then and there to make report and file petition for sale of real estate to pay debts, or in default thereof that he show cause why he should not be removed from his said office, and to further do and perform what shall then by the said court be required and adjudged." This citation was personally served on Steagall on August 22, 1892. Afterwards an order was entered by said court, the material part of which is as follows: "Said citation being endorsed by said sheriff showing due service thereon, and now said Steagall being three times called and comes not but wholly makes default, and there being no cause shown, as required by the order of this court, why the said William O. Steagall should not be removed from his said office as such administrator, it is therefore ordered by the court that said William O. Steagall be and he hereby is removed from his office as such administrator of the estate of Emily Mansfield, deceased, and the administration of such estate be committed to some fit and suitable person as required by law."

On January 2, 1893, Harrington Clanahan, a creditor of the estate, filed in the clerk's office of the county court a petition in proper form, asking that Willis Baker be appointed administrator *de bonis non*, and on the next day Baker was accordingly appointed, duly qualified, and gave bond in the sum of $2000, with security which was approved by the court, and on February 6, 1893, Baker, as such administrator *de bonis non*, filed his amended petition to sell the real estate involved in this controversy

to pay the debts of said estate, to which Petty, the appellee, was made a defendant, and duly answered by William H. Moore, his guardian *ad litem,* but neither Clanahan, the purchaser, nor the appellants, were made parties thereto, and on February 11, 1893, a decree was duly entered ordering the sale of the real estate described in the bill for partition in this suit, and afterwards, on March 18, 1893, a report of the sale was filed by said administrator showing the sale of such real estate to Harrington Clanahan for $927.38, which the court, after finding that the sale was duly had as required by law and by order of the court, and was conducted in all respects as required by law and by order of the court, approved, and the conveyance to Clanahan was confirmed.

Section 30 of the Administration act (Hurd's Stat. 1899, p. 109,) provides that the county court "may revoke all letters, testamentary or of administration, granted to persons who * * * waste or mismanage the estate, or who conduct themselves in such manner as to endanger their * * * securities, in all which cases the court shall summon the person charged to be in default or disqualified, as aforesaid, to show cause why such revocation should not be made. When revocation is made, the reason therefor shall be stated at large upon the record." The proceedings of the county court show that the former administrator had petitioned for the sale of real estate, an order of sale entered and the premises sold thereunder; that after the same was made it was defeated in the circuit court of Pope county. After this sale was set aside, the record shows that there were debts existing against the estate; that there were no personal assets to pay the debts; that the former purchaser had paid $100 on the first sale to Steagall, the original administrator, who "knows not what he did with it;" that the mortgage creditor threatened to foreclose, which, if done, would sacrifice the real estate, deprive the heirs of their rights and interests and jeopardize the claims of other credit-

ors. With the estate in this condition and with creditors pressing for their demands, Steagall removed to Shelby county, refused or neglected to make a report or take any steps toward selling the real property of the decedent to pay the liabilities of the estate, and, so far as the citation, the petition therefor and the records of the county court show, Steagall was guilty of gross neglect of his duties as administrator and by his conduct was endangering his securities. Thereupon he was cited by the county court "to make report and file petition for sale of real estate to pay debts, *or in default thereof that he show cause why he should not be removed from his said office.*" To this citation Steagall made no answer or appearance, offering no explanation for his misconduct and mismanagement of the estate that was charged against him in the petition of Margaret Mansfield, which he was cited to answer, and thereupon the court, acting within its statutory jurisdiction, properly ordered his removal. Where the records show facts which confer jurisdiction, these facts cannot be impeached collaterally, and this court will not go behind the decree in a collateral proceeding to see if it is warranted by the evidence. *Wing* v. *Dodge,* 80 Ill. 564.

Appellee relies with much force upon the cases of *Munroe* v. *People,* 102 Ill. 406, and *Hanifan* v. *Needles,* 108 id. 403. While, at first blush, these cases may appear to sustain his contention, it will be found, upon a careful reading of them, that they are in entire harmony with all that is said herein. In the former case the administratrix was cited simply to show cause *"why she should not pay said claim,"* and we said (p. 411): "This did not give the court jurisdiction of her person to adjudge on the 15th day of the next month, and with no further notice to her, that she, as administratrix, should be removed and her letters revoked." And again (p. 412): "Before the court has lawful power to adjudge a revocation of letters of administration, it is expressly provided 'the

court shall summon the person charged to be in default,'
not to show cause why he shall not pay a certain claim,
but 'to show cause why *such revocation should not be made.*'"
But the doctrine was fully recognized in that case that
"where a matter is submitted to a court upon which that
court has authority to consider and decide, and such
court does decide, such judgment, though erroneous, is
valid until reversed or set aside." In the latter case re-
lied upon by appellee, the executor was cited to appear
and present his account of the estate for settlement, and
upon failing to appear, the court, without further notice
to him, for such reason revoked the letters and required
the executor to account for and pay over to his successor
all property in his hands belonging to the estate, and we
said (p. 409): "It is a fundamental principle that under-
lies our whole judicial fabric, that in all proceedings in
courts of justice wherein it is sought to deprive the citi-
zen of his property or any right or privilege recognized
by law, the party to be affected by them is entitled to
reasonable notice of the time and place of hearing and
of the general nature or object of such proceedings. In
conformity with this general principle the county court
has no power or jurisdiction to revoke the letters of an
executor or administrator, under the above section, until
he is first cited to appear and show cause why his letters
shall not be revoked. The citation in this case did not
contain the slightest intimation that there was any pur-
pose on the part of the court, or any one interested in
the estate, to remove him from office. It simply directed
him to appear on the first day of the next term of the
court 'and present his accounts of said estate for settle-
ment as said executor.' Nor is there any intimation in
the citation that he was charged with waste or misman-
agement of the estate, as contemplated by the above sec-
tion of the statute."

Clearly, in these two cases there was no jurisdiction
of the court over the persons of the personal representa-

tives to give it power to revoke the letters and appoint their successors, but in the case now before us the petition of Margaret Mansfield was that the administrator be removed and some other discreet person appointed in his stead, and in such petition there was plainly stated such facts as showed that the acts and conduct of Steagall amounted to a gross mismanagement of the estate and that he was endangering his securities upon his bond. (*In the matter of Corrington,* 124 Ill. 363; *Whitney* v. *Peddicord,* 63 id. 249; *Campau* v. *Campau,* 19 Mich. 125.) The notice to him was, that this petition had been filed, and that upon failure to comply with its demand he should show cause, on the 5th day of September, 1892, why he should not be removed from his said office.

We are of the opinion that the county court complied with all the necessary provisions of the statute to give it jurisdiction over both the person and the subject matter in this proceeding, and even though mere irregularities occurred in the proceeding, such could only be urged on direct proceeding for reversal. In *Blair* v. *Sennott,* 134 Ill. 78, we said (p. 88): "Having jurisdiction of the subject matter and of the person, the same presumptions in favor of the correctness of the ruling of the probate court must be indulged as in favor of circuit courts under like circumstances." The record showing that the court had jurisdiction of the person and the subject matter to remove Steagall, such finding cannot be questioned in a collateral proceeding. In the case of *Harris* v. *Lester,* 80 Ill. 307, this court said (p. 310): "No principle of law is better settled than where a court has jurisdiction of the subject matter and the persons of the parties, its judgment or decree, when questioned collaterally, will be held valid, and, notwithstanding the court may have proceeded irregularly, a purchaser in good faith under its judgment or decree will be protected." (*Bowen* v. *Bond,* 80 Ill. 351.) It has also been repeatedly held by this court that where an administrator *de bonis non* is appointed by

the proper court having jurisdiction, he is at least administrator *de facto*, and being such, the regularity of his appointment cannot be questioned in a collateral proceeding. (*Wight* v. *Wallbaum*, 39 Ill. 554; *Duffin* v. *Abbott*, 48 id. 17; *Golder* v. *Bressler*, 105 id. 419; *People* v. *Salomon*, 184 id. 490; *Dodge* v. *Cole*, 97 id. 338.) Appellee was also a party to the proceeding to sell real estate, and answered by his guardian *ad litem*, and he will not be permitted, in a collateral proceeding, to take advantage of mere errors in the original proceeding. *Wing* v. *Dodge*, 80 Ill. 564.

Under the law as laid down by this court, Baker was, so far as this proceeding is concerned, fully authorized to act as such administrator and legally authorized to petition and make the sale of the real estate for the payment of debts under the orders of the county court, and the sale so made by him is valid and binding and the rights of the purchasers will be protected. As said in *Harris* v. *Lester*, 80 Ill. 307 (p. 319): "Purchasers at judicial sales who invest their capital upon the faith of a decree of court of competent jurisdiction have rights that are just as sacred and as much within the protection of the courts as the rights of minor heirs."

It is next objected that the petition filed by Baker for the sale of real estate failed to show that there were any unpaid claims against the estate. The petition for the sale of land to pay debts contained the following allegations: That inventory and appraisement were duly filed, and that the appraiser's estimate of specific property allowed as an award to Margaret J. Mansfield, a child of the deceased residing with her at the time of her death, the sum of $683, and that Margaret J. Mansfield executed her relinquishment and selection and receipted the administrator for the sum of $189.30 on her award, and preferred balance of $493.70 of such award in money and as a claim against said estate, and also averred that the appraised value of the personal property of said estate was $189.30, which was taken by Margaret Mansfield on

her award; that no other property came to the hands of said administrator, and that there was no other property except the land above described; that such administrator had rendered a true account of the personal property of said estate to the county court of said county, which was approved, and which report was filed as exhibit "A" of said petition. It further alleged that by the decree of the circuit court setting aside the proceedings under the first petition for sale of lands to pay debts, it was ordered that the sum of $100 paid upon said first sale, and $21.26 taxes, be a preferred claim against said estate; that the said sum of $100 so received by the former administrator, and the said personal property taken by said child on the award, was all the personal property of said estate; that the mortgage indebtedness on the land amounted to $576.42, debts amounted to $53.34, and due Clanahan, the former purchaser, $121.26, besides costs of circuit court; due Margaret J. Mansfield on her award $493.70, aggregating $1191.38, and all unpaid.

In *Moffitt* v. *Moffitt*, 69 Ill. 641, this court, referring to *Stow* v. *Kimball*, 28 Ill. 93, said (p. 646): "In that case there was no allegation that the debts had even been allowed against the estate, and the supplemental petition for leave to make sale of real estate not embraced in the petition did not even state that there were any debts against the estate, and the jurisdiction was sustained."· Even if it were necessary to state the amount of the debts against the estate to sustain the decree in a collateral proceeding, we think it sufficiently appears from the petition that the debts of the estate aggregated $1191.38, and whatever defect may have been in the statement of such, it was a mere irregularity that cannot be attacked in this proceeding. *Bowen* v. *Bond*, 80 Ill. 351; *Iverson* v. *Loberg*, 26 id. 179; *Hobson* v. *Ewan*, 62 id. 146.

It is next objected that the probate court had no jurisdiction to order a sale of the premises, for the reason that a further and additional bond, in a sum double the

value of the real estate to be sold, was not executed by the administrator *de bonis non*, as required by section 7 of chapter 3 of the statutes. There was no order of court requiring any such bond to be given, and none was given. The records of the county court show that the administrator *de bonis non* faithfully performed the entire duties of his office and applied all the proceeds of the sale of real estate upon the debts of his intestate and fully accounted for the same to the probate court. After notice was given, as required by law, to all the heirs and others interested in the estate that the administrator *de bonis non* would file his final report and ask for discharge, it appears that his report was duly approved by the court and that no heir or creditor made any objection to said report, and it does not appear that any one sustained any injury by the failure to give this bond. We do not feel warranted in holding that the failure of the administrator *de bonis non* to give such bond would render the sale to Clanahan void. (*Drake* v. *Kinsell,* 38 Mich. 232.) The oversight of the court to require the administrator *de bonis non* to give a bond was but a mere irregularity and should not defeat the title of appellants, who were not parties to the record and who obtained this land by *mesne* conveyances from the purchaser at such sale, and who have been in the quiet and peaceable possession of the same for a number of years and expended considerable sums in improvements.

For the reasons above indicated we are of the opinion that the decree of the circuit court was erroneous. The judgment is reversed and the cause remanded to the circuit court of Pope county for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*